UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
BROOKLYN COMEDY COLLECTIVE INC.,

                Plaintiff,

      – against –

OMHBROOKLYN LLC and EDWARD
FARRELL,

                Defendants.
----------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

22-CV-4758 (AMD) (TAM)

**ANN M. DONNELLY**, United States District Judge:

On August 12, 2022, the plaintiff filed an action against the defendants, seeking injunctive relief and monetary damages for alleged violations of trademark infringement, unfair competition, and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), New York General Business Law § 360-k, and New York common law. (ECF No. 1.) Before the Court is the defendants' motion to dismiss the complaint for failure to state a claim. (ECF No. 26.) For the following reasons, the motion is denied.

## BACKGROUND

The following allegations are taken from the complaint and taken as true for the purposes of this order.[1] In February 2018, the plaintiff began operating the Brooklyn Comedy Collective ("BCC"), a comedy club that hosts "comedy shows, open-mics, improvisation performances, comedy classes," and other events. (ECF No. 1 ¶ 1.) Since it opened, including through the COVID-19 pandemic, BCC has produced approximately 2,000 comedy shows, sold over 60,000 tickets, hosted a "long list of A-list comedic acts," received "extensive media coverage," and

---

[1] The Court also considers any documents attached to or referenced in the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

"cultivated a respected reputation around New York City, especially within Brooklyn." (*Id.*; *see also id.* ¶¶ 17–29.) BCC has leased three different locations in the Williamsburg neighborhood of Brooklyn since it opened (*id.* ¶ 14); as of the filing of this action, it hosts roughly 19 live performances a week (*id.* ¶ 21). BCC owns the domain name www.brooklyncc.com and operates the website linked to the name. (*Id.* ¶ 25.) It also controls and operates the Instagram account @comedybrooklyn, the Twitter account @comedybrooklyn, and the Eventbrite account "Brooklyn Comedy Collective." (*Id.*) The plaintiff asserts trademark rights in "the name and mark BROOKLYN COMEDY COLLECTIVE and the commonly used abbreviation "BCC" (together, "BCC Marks"). (*Id.* ¶ 1.)

In September 2013, the defendant OMHBROOKLYN LLC ("OMH") opened a bar and comedy club named "Old Man Hustle" in the Lower East Side neighborhood of Manhattan. (*Id.* ¶ 31.) The defendant Edward Farrell bought OMH in 2015 (ECF No. 26-3 ¶ 1), and in December 2019,[2] OMH and Farrell opened a second bar and comedy club in Brooklyn ("OMH Brooklyn"), which was about a five-minute walk from BCC's location at the time (ECF No. 1 ¶ 32). OMH also named its Brooklyn location "Old Man Hustle;"[3] the building's façade displayed that name with "BKLYN BAR & COMEDY CLUB" displayed "in a secondary and supplementary role[] beneath the stylized OLD MAN HUSTLE logo." (*Id.* ¶ 33.) During November and December of 2019, OMH Brooklyn's Instagram account posted multiple photographs of the venue's logo. (*Id.* ¶ 34.)

---

[2] When OMH Brooklyn opened in December 2019, "there were no other comedy venues in the vicinity of BCC." (ECF No. 1 ¶ 35.)

[3] In an affidavit in support of the defendants' motion to dismiss, Farrell states that the comedy club in the Williamsburg, Brooklyn location was initially called "Old Man Hustle BKLYN COMEDY Club," and that he also opened a bar called "Old Man Hustle Bar" in the same location. (ECF No. 26-3 ¶¶ 2–3.) "The concept was that the bar would be a distinct business from the comedy club, with distinct physical separation." (*Id.* ¶ 3.) Farrell does not dispute the plaintiff's allegations about the business's façade.

2

On March 24, 2021, OMH announced in an Instagram post that OMH Brooklyn was changing its name: "Old Man Hustle BKLYN Comedy Club is now @brklyncomedyclub[.] Same great space, slightly different name." (*Id.* ¶ 36.)  On April 16, 2021, OMH posted another photograph to Instagram showing that OMH Brooklyn had changed the logo on its stage backdrop, from its former "Old Man Hustle" logo to one with "BKLYN COMEDY Club" in large letters and "Old Man Hustle" in a much smaller font in the bottom right corner. (*Id.* ¶ 36.) OMH Brooklyn also removed "Old Man Hustle" from its marquee and posted a sign on its window of the "BKLYN COMEDY Club" logo. (*Id.* ¶¶ 38–40.)[4]

BCC and OMH Brooklyn are not associated, affiliated, or connected with each other, but both are "comedy venues operating within blocks of each other that advertise and promote their comedy shows on their respective websites, through search engines and Google Ads" and through social media to "the same consumers." (*Id.* ¶¶ 41–42.)  Both comedy clubs use marks[5] with the word "Brooklyn" in some form as well as the word "comedy," and the third word of each mark begins with the letter "C;" their logos also both stack each word in a column, in white text on a black background (*id.* ¶ 44–45):

---

[4] Farrell explains that he decided to change the name because the comedy club patrons were using the bar "as a 'lobby' or waiting area for the comedy club," which "deterred bar patrons." (ECF No. 26-3 ¶ 5.) Farrell "remov[ed] the 'Old Man Hustle' name from the comedy club in order to differentiate the locations." (*Id.*)

[5] "[A] mark used in connection with the rendering of services is referred to as a 'service mark,'" but the Court uses the terms "mark" and "trademark" for ease of reference because the parties use those terms. *Public Free Will Corp. v. Verizon Commc'ns, Inc.*, No. 15-CV-6354, 2017 U.S. Dist. LEXIS 39168, at *7 (E.D.N.Y. Mar. 17, 2017) (citing *Murphy v. Provident Mut. Life Ins. Co.*, 923 F.2d 923, 926 (2d Cir. 1990)).

**BKLYN COMEDY CLUB**         **BROOKLYN COMEDY COLLECTIVE**

 

Since OMH Brooklyn's March 2021 name change to BKLYN COMEDY Club, customers have confused it with BCC. (*Id.* ¶ 43.) The complaint alleges 14 specific instances of customers' "actual confusion" between the two clubs because of the defendants' use of the "BKLYN COMEDY Club" mark, and it alleges that additional, similar incidents likely have occurred. (*Id.* ¶ 46).

On October 12, 2021, BCC's founder and artistic director Philip Markle sent OMH an email "advising it of BCC's trademark rights in the [BCC] Marks" and asking OMH "to discontinue the use of the [BKLYN] COMEDY C[lub] Mark." (*Id.* ¶ 47; *see* ECF No. 1-7.) OMH never responded to the email. (ECF No. 1 ¶ 47.)

On October 21, 2021, OMH filed an application with the U.S. Patent and Trademark Office ("USPTO") to trademark the "BKLYN COMEDY Club" mark, which would cover "comedy club services" ("'405 Application"). (*Id.* ¶ 49; *see also* ECF No. 1-8.) On November 16, 2021, BCC registered a New York State trademark for the mark "BCC BROOKLYN COMEDY COLLECTIVE" for "a comedy club/theater and a school with year-round live shows and classes that trains aspiring comedians in the art of comedy," claiming that it has used the trademark continuously since February 5, 2018. (ECF No. 1 ¶ 12; *see* ECF No. 1-1.)

On November 29, 2021, BCC called Farrell "to complain about rampant instances of actual consumer confusion" and to ask again that OMH discontinue the use of the BKLYN

4

COMEDY Club Mark; Farrell refused to change the name.  (ECF No. 1 ¶ 48.)  On January 27, 2022, BCC's legal counsel sent a demand letter to OMH "asserting [BCC's] prior-existing rights in the BROOKLYN COMEDY COLLECTIVE Marks, outlining the infringing nature of the [BKLYN] COMEDY C[lub] Mark, and requesting the discontinuance of the infringing mark for an alternative, non-infringing name."  (*Id.* ¶ 50; *see also* ECF No. 1-9.)  BCC and OMH's legal counsel exchanged emails and phone calls after OMH received the demand letter, but OMH refused to stop using the BKLYN COMEDY Club Mark.  (ECF No. 1 ¶ 50.)

The plaintiff alleges trademark infringement, unfair competition, and false designation of origin under the Lanham Act, trademark infringement under New York General Business Law, and trademark infringement and unfair competition under New York state common law.  It seeks injunctive relief prohibiting the defendants from using the name or mark "BKLYN COMEDY CLUB," "BROOKLYN COMEDY CLUB," "BROOKLYN COMEDY COLLECTIVE," or "any variation thereon" and requiring the defendants to take affirmative steps to dispel confusion.[6]  The plaintiff also seeks monetary relief in the form of (i) the defendants' profits arising from the infringement, believed to be over $150,000; (ii) attorney's fees; and (iii) treble and punitive damages "arising from [the d]efendant[s'] intentional and willful conduct."  (*Id.* at 29.)

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the

---

[6] The plaintiff also requests an order directing the defendants to "immediately cease the use of, and take all such actions and file all such required filings with the U.S. Patent and Trademark Office to expressly abandon the U.S. Trademark Application Serial Number 97/086,405."  (ECF No. 1 at 28.)  However, the parties agree that the defendants "abandoned" their '405 Application after they changed their name and after the plaintiff opposed the application; the Trademark Trial and Appeal Board rendered judgment in favor of the plaintiff by default.  (ECF No. 28 at 16; ECF No. 29 at 8–9.)

reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Pleadings must be construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

## DISCUSSION

### I.  Mootness[7]

The defendants argue that the plaintiff's complaint is moot, and therefore must be dismissed, because on February 24, 2023, the defendants changed their comedy club's name from "BKLYN COMEDY Club" (the "March 2021 Mark") back to its original name "Old Man Hustle BKLYN COMEDY Club" (the "March 2023 Mark") (ECF No. 26-2 at 5; ECF No. 26-3 ¶ 6) and began using the following mark:



The plaintiff responds that (i) the defendants' unilateral decision to alter the allegedly infringing trademark does not moot the complaint as to the March 2021 Mark and, even if it did, (ii) the complaint is not moot as to the February 2023 Mark, which is a "variation" of the plaintiff's mark, and is encompassed by the complaint's allegations. (*See* ECF No. 28 at 6–9.)

---

[7] Courts analyze mootness challenges under Rule 12(b)(1), because mootness implicates the Court's subject-matter jurisdiction. *See Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) ("Under Article III of the U.S. Constitution, '[w]hen a case becomes moot, the federal courts lack subject matter jurisdiction over the action.'" (quoting *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994))). A court deciding a motion under Rule 12(b)(1) that makes a factual attack on the court's jurisdiction may rely on evidence outside of the pleadings. *Cortlandt St. Recovery Corp. v. Hellas Telecoms., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015). Here, that evidence includes Farrell's affidavit (ECF No. 26-3) and the plaintiff's exhibits in support of its opposition (ECF No. 28-1).

A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). However, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* Accordingly, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur," *Friends of the Earth, Inc. v. Laidlaw Env'l Servs., Inc.*, 528 U.S. 167, 190 (2000), and that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation," *Mhany Mgmt. v. Cnty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016).

a. **March 2021 Mark**

The defendants maintain that they have "ceased the use of" the "BKLYN COMEDY Club" mark (ECF No. 26-2 at 5; ECF No 29 at 4, 9–11); Farrell states that the "change was made in good faith, and for the purpose of avoiding any allegations of trademark infringement or violations" (ECF No. 26-3 ¶ 6). He explains that he "[has] taken actions to change the name," including adopting a new logo, "which appears as the backdrop on stage and on all branding[,] including social media, a new website, all advertisements, . . . and the [G]oogle description." (*Id.* ¶ 7.)

These representations do not sufficiently show that it is "absolutely clear" that the defendants' wrongful conduct will not recur. The defendants do not explain why "the allegedly wrongful behavior could not reasonably be expected to recur," *Friends of the Earth*, 528 U.S. at 190, in the form of another name change. *See Am. Council of the Blind of N.Y., Inc. v. City of New York*, 495 F. Supp. 3d 211, 248 (S.D.N.Y. 2020). Nor have they fully implemented the new

7

name; as of the time the plaintiff filed its opposition, OMH Brooklyn's Instagram handle remained "bklyncomedyclub" (ECF No. 28 at 5–6), and its Twitter account, website, and storefront used three different marks, which suggests that OMH Brooklyn does not intend to use the February 2023 Mark in all its branding. Indeed, as discussed below, OMH Brooklyn's updated name and mark still include the words "BKLYN Comedy Club," and the defendants have not shown that they will not continue to emphasize that secondary mark in its branding.

Further, the defendants decided to change the name shortly after mediation efforts broke down. (*See* ECF No. 21 (Jan. 26, 2023 status report indicating that the parties did not reach a settlement at mediation).) "[S]uch timing suggests a litigation-driven motivation, as opposed to an authentic, durable commitment on the part of the defendant[s]" to change the name. *Am. Council of the Blind*, 495 F. Supp. 3d at 248 (finding the dispute was not moot where the defendant adopted a new policy, ostensibly addressing the plaintiff's concerns, "only when it was facing a formidable motion for summary judgment;" the timing "[left] it far from 'absolutely clear' that the [defendant] would not abandon its newly announced commitment . . . were [the] plaintiffs' claims denied as moot"); *see also Mhany Mgmt.*, 819 F.3d at 604–05.

Moreover, even though the defendants "abandoned" their '405 Application for the March 2021 Mark, the defendants do not disclaim the right to use the mark. Rather, they continue to "vehemently deny any trademark infringement." (ECF No. 26-2 at 5; ECF No. 29 at 6, 7; *see also* ECF No. 26-3 ¶ 6 (The name change "was made in good faith, and for the purpose of avoiding any allegations of trademark infringement or violations.").) *See, e.g., Pinaud, Inc. v. Huebschman*, 27 F.2d 531, 537 (E.D.N.Y. 1928) ("Where infringement has been discontinued before the bringing of a suit, the plaintiff is not obliged to rely upon mere promises of the defendant to avoid infringement in the future, as long as it appears that at the time of the suit the

defendant still claims the right to do that of which the plaintiff complains."), *aff'd*, 27 F.2d 537–38 (2d Cir. 1928); *Mattel, Inc. v. Robarb's, Inc.*, No. 00-CV-4866, 2001 U.S. Dist. LEXIS 11742, at *7–8 (S.D.N.Y. Aug. 8, 2001) ("Although the defendants have ceased their infringing behavior, the Court is entitled to consider this fact skeptically" for purposes of granting a permanent injunction "given that Robarb's has already infringed, continues to contest the lawfulness of its actions, and ceased its infringing conduct only after the initiation of this lawsuit. If not enjoined, Robarb's would have little incentive not to employ Mattel trademarks in advertising its product in the future."); *cf. Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 256 (S.D.N.Y. 2012) ("Courts in this circuit have long held that a permanent injunction should issue in trademark cases where a defendant asserts that its pre-lawsuit use was lawful, and that pre-lawsuit behavior may serve as a basis for a permanent injunction, as it may indicate that [the] defendant's intentions are in doubt.").

Moreover, the defendants have not shown that the name change has "completely and irrevocably eradicated the effects of the alleged violation." *Mhany Mgmt.*, 819 F.3d at 603. The name change does not provide the plaintiff relief for the two years in which it alleges that the defendants infringed on the BCC Marks, nor does it moot the Court's authority to issue injunctive or monetary relief for any harm that the plaintiff ultimately is able to prove. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) ("[T]he court's power to grant injunctive relief survives discontinuance of the illegal conduct" because the "purpose of an injunction is to prevent future conduct."); 15 U.S.C. § 1117(a).

Accordingly, the plaintiff's claims as to the March 2021 Mark are not moot.

    **b.    February 2023 Mark**

The defendants also argue that the February 2023 Mark is sufficiently different from the March 2021 Mark and the plaintiff's mark such that it is not "cover[ed]" by the complaint, and

9

that there is no live controversy because "relief was already granted" by the defendants adopting the new mark. (ECF No. 29 at 8.) The plaintiff responds that it continues to suffer injury: Though the defendants have now readopted the "Old Man Hustle" moniker, they continue to append the offending "BKLYN COMEDY Club" name to it to make the name "Old Man Hustle BKLYN COMEDY Club." (ECF No. 28 at 9–15.)

A live controversy remains as to whether the February 2023 Mark infringes the BCC Marks because the new mark still references them by including the words "BKLYN COMEDY Club."[8] *See Century 21 Real Estate Corp. v. LendingTree, Inc.*, 425 F.3d 211, 217 (3d Cir. 2005) (holding that a trademark infringement action was not mooted by the defendant's modification of its allegedly infringing website, where "[t]he modified language that [the defendant] employed [on the website] still referenced [the plaintiff's] marks and, thus, [was] potentially infringing"); *Health Partners Plans, Inc. v. Reading Health Partners, LLC*, No. 16-CV-1340, 2019 U.S. Dist. LEXIS 232568, at *6 (E.D. Pa. July 31, 2019) (holding action was not mooted by the defendant adopting a new name that continued to include the allegedly trademarked combination of words).

Further, the injunctive relief the plaintiff seeks is not limited to enjoining the defendants' use of the name "BKLYN COMEDY Club." The complaint asks the Court to enjoin the defendants' use of the plaintiff's "trademarks, trade name or domain name," "or any words confusingly similar," "or any variation thereon," "either standing alone or as part of any other name or mark." (ECF No. 1 at 27.) The complaint also asks the Court to enjoin the defendants

---

[8] The defendants argue that the plaintiff cannot claim that the February 2023 name infringes its marks because OMH Brooklyn used the same name when it opened in 2019, and the plaintiff does not contend that the original name was infringing. (ECF No. 26-2 at 7.) The plaintiff responds that the defendants "have not retreated to the original mark . . . but have simply reversed the order of the terms in their '405 Application." (ECF No. 28 at 7.) This argument goes to the merits of the dispute and the Court does not address it at this stage.

from "[e]ngaging in any activity constituting unfair competition with [the p]laintiff, or constituting an infringement of [the p]laintiff's trademarks or trade name." (*Id.* at 28.) "Because the plaintiff maintains that [the defendants'] new name—like the old name—is confusingly similar to its trademarks," and that use of the new name constitutes unfair competition with the plaintiff, "the case presents a live controversy as to the injunctive relief sought." *Health Partners Plans, Inc.*, 2019 U.S. Dist. LEXIS 232568, at *8. Whether the February 2023 Mark is indeed confusingly similar to the plaintiff's trademarks is a question on the merits, not on the Court's jurisdiction. *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 498 n.30 (S.D.N.Y. 2008) ("[M]erely because [the d]efendant quickly discontinued any offending conduct does not insulate them from any wrongful conduct, although it may serve to mitigate the extent of any liability." (quoting *Hamzik v. Zale Corp./Del.*, No. 06-CV-1300, 2007 U.S. Dist. LEXIS 28981, at *12 n.5 (N.D.N.Y. Apr. 18, 2007))).

**II.     Lanham Act, New York Law, and Common Law Claims**

Section 43(a) of the Lanham Act allows an owner of an unregistered trademark to sue for trademark infringement when another person, without the mark owner's consent, uses a mark in commerce in a manner that is "likely to cause confusion, or to cause mistake, or to deceive" about the source of the relevant "goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(A). To state a claim for trademark infringement, false designation of origin, and unfair competition under Section 43(a), a plaintiff must allege "that (1) 'it has a valid mark that is entitled to protection' and that (2) 'the defendant's actions are likely to cause confusion with [that] mark.'" *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) (quoting *The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 2016)). The elements necessary to plead claims for trademark infringement and unfair competition under New York statutory and common law mirror those for Lanham Act claims. *Van Praagh v.*

11

*Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014) (quoting *Allied Interstate LLC v. Kimmel & Silverman P.C.*, No. 12-CV-4204, 2013 U.S. Dist. LEXIS 113465, at *16 (S.D.N.Y. Aug. 12, 2013)) (New York common law claims); *Biosafe-One, Inc. v. Hawks*, 639 F. Supp. 2d 358, 367 (S.D.N.Y. 2009) (New York General Business Law § 360-k claim); *see also ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 146 (2d Cir. 2007).

  **a. The Plaintiff's Mark Is Entitled to Protection**

An unregistered mark, like the plaintiff's,[9] is entitled to protection if it is "inherently distinctive," *Hi-Tech Pharmacal Co. v. Hi-Tech Pharms., Inc.*, No. 05-CV-2674, 2007 U.S. Dist. LEXIS 48644, at *17 (E.D.N.Y. July 5, 2007), or if it has "acquire[d] distinctiveness by achieving 'secondary meaning' among the relevant consumer market," *C.M.B. Prods., Inc. v. SRB Brooklyn, LLC*, No. 19-CV-2009, 2022 U.S. Dist. LEXIS 123078, at *9 (E.D.N.Y. July 12, 2022) (citations omitted); *see Geigtech E. Bay, LLC v. Lutron Elecs. Co.*, 352 F. Supp. 3d 265, 275 (S.D.N.Y. 2018) (a product develops a secondary meaning "when, 'in the minds of the public, the primary significance of a product feature [] is to identify the source of the product rather than the product itself'" (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982))). "Whether a mark has acquired secondary meaning in the minds of consumers is a question of fact that turns on the holistic consideration of six non-dispositive factors: consumer studies, sales success, unsolicited media coverage, attempts to plagiarize and length and

---

[9] The Court takes judicial notice that the plaintiff has a New York state-registered trademark for the BCC Marks under the registration number S25496 (ECF No. 1-2) and that the USPTO Trademark Trial and Appeal Board ("TTAB") entered a default judgment in favor of the plaintiff's challenge to the defendants' '405 Application (ECF Nos. 1-8, 1-9). *Lopez v. Nike, Inc.*, No. 20-CV-905, 2021 U.S. Dist. LEXIS 7583, at *30–31 (S.D.N.Y. Jan. 14, 2021). However, the BCC Marks are not "federally registered," so the Court considers it "unregistered" for purposes of this analysis. *Bear U.S.A., Inc. v. A.J. Sheepskin & Leather Outerwear, Inc.*, 909 F. Supp. 896, 903 (S.D.N.Y. 1995).

exclusivity of use, and advertising expenditures." *C.M.B. Prods.*, 2022 U.S. Dist. LEXIS 123078, at *10.

The plaintiff alleges that the BCC Marks have "acquired distinctiveness and secondary meaning in the minds of the consuming public and the trade" (ECF No. 1 ¶ 30); the defendants do not contest the allegation (*see* ECF Nos. 26-2, 28). Regardless, this issue is a "'fact-intensive inquiry' that requires the development of a robust evidentiary record." *Blockchain Lux. S.A. v. Paymium*, No. 18-CV-8612, 2019 U.S. Dist. LEXIS 133897, at *15 (S.D.N.Y. Aug. 7, 2019) (quoting *A.V.E.L.A. v. Estate of Marilyn Monroe*, 131 F. Supp. 3d 196, 212–13 (S.D.N.Y. 2015)); *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 316 (S.D.N.Y. 2012) ("Whether a mark has acquired secondary meaning is a factual determination, proof of which entails vigorous evidentiary requirements."). Accordingly, acquired distinctiveness through secondary meaning is a question of fact that this Court cannot decide on a Rule 12(b)(6) motion to dismiss. *A.V.E.L.A.*, 131 F. Supp. 3d at 213 ("The question of whether a descriptive mark has acquired the secondary meaning necessary to be distinctive generally should not—and here cannot—be resolved on a motion to dismiss."); *CourtAlert.com, Inc. v. e-Law, LLC*, No. 12-CV-2473, 2013 U.S. Dist. LEXIS 126926, at *6 (S.D.N.Y. Aug 26, 2013) (determining whether mark had secondary meaning presented a question of fact that could not be decided on a motion to dismiss).

The defendant could not prevail even if the Court considers the secondary meaning factors. The plaintiff alleges that it has used the BCC Marks to advertise its services since February 5, 2018, and did so exclusively for about three years until OMH Brooklyn changed its name in March 2021. (ECF No. 1 ¶¶ 12, 36.) The plaintiff alleges significant sales success associated with the BCC Marks, having produced approximately 2,000 shows in various

13

Brooklyn venues, sold over 60,000 tickets, hosted "A-list comedic acts," and produced a show "[a]t the personal request of [the] Brooklyn Borough President," among other events.  (*Id.* ¶¶ 1, 18, 22.)  BCC has received "unsolicited and favorable media" from publications "well-known and relevant to its business and community" (*id.* ¶ 27; ECF No. 1-4), and "has garnered significant recognition by the consuming public, as evidenced [by] extensively positive reviews" (ECF No. 1 ¶ 28; ECF No. 1-5).  Taken as true, and drawing all inferences in the plaintiff's favor, these allegations plausibly establish that the BCC Marks have acquired secondary meaning to withstand a motion to dismiss.  *See, e.g.*, *Blockchain Lux. S.A.*, 2019 U.S. Dist. LEXIS 133897, at *16; *A.V.E.L.A.*, 131 F. Supp. 3d at 213; *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 347–49 (S.D.N.Y. 2014).

        **b.**    **Consumer Confusion**

In determining whether a defendant's use of a mark will cause confusion, courts look to the following factors:

> (1) the strength of the plaintiff's mark; (2) the similarity of the marks; (3) the competitive proximity of the products in the marketplace; (4) the likelihood that the senior user will "bridge the gap" by moving into the junior's product market; (5) evidence of actual confusion; (6) the junior user's bad faith in adopting the mark; (7) the respective quality of the products; and (8) the sophistication of the consumers in the relevant market.

*Van Praagh*, 993 F. Supp. 2d at 301 (quoting *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)).  Like the "secondary meaning" test, "[t]he likelihood of confusion test is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss."  *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006).  "[W]hen applying the *Polaroid* factors to determine likelihood of confusion at a motion to dismiss stage, courts have not required all factors to be addressed in order to find adequate pleading of a likelihood of confusion."  *World Trade Ctrs. Ass'n, Inc. v. Port Auth. of*

14

*N.Y. & N.J.*, No. 15-CV-7411, 2016 U.S. Dist. LEXIS 173621, at *6 (S.D.N.Y. Dec. 15, 2016); *see also Fiber-Shield Indus. Inc. v. FabricShield Holdings, LLC*, No. 20-CV-6059, 2023 U.S. Dist. LEXIS 57520, at *11 (E.D.N.Y. Mar. 31, 2023).

Enough *Polaroid* factors weigh in favor of a likelihood of confusion to make the plaintiff's claims plausible as to both the March 2021 Mark and the February 2023 Mark. As to the first factor, the strength of a mark "depends ultimately on its distinctiveness . . . in the eyes of the purchasing public," *Easy Spirit LLC v. Skechers U.S.A., Inc.*, 515 F. Supp. 3d 47, 71 (S.D.N.Y. 2021); as discussed above, the plaintiff has sufficiently pleaded its marks acquired distinctiveness.

As to the second factor, the BCC Marks and the March 2021 Mark are "strikingly similar, possessing a strong visual and phonetic resemblance and . . . are almost identically named." *Fiber-Shield Indus., Inc.*, 2023 U.S. Dist. LEXIS 57520, at *11–12 (quoting *Syntex Labs., Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566, 569 (2d Cir. 1971)). "Brooklyn Comedy Collective" and "BKLYN COMEDY Club" are three-word phrases beginning with the same two words, where the third—and least descriptive—word starts with the letter "C." The words "Collective" and "Club" also have similar meanings. The BCC and March 2021 logos both use white font on a black background and stack the words on top of each other, with the "Old Man Hustle" label added in much smaller text in the corner. The differences between the BCC Marks and the February 2023 Mark are certainly more pronounced, but the February 2023 Mark still uses the "BKLYN COMEDY Club" Mark as a secondary name or subtitle.[10]

---

[10] As the plaintiff explains, the February 2023 Mark "is experienced visually and aurally as OLD MAN HUSTLE BROOKLYN COMEDY CLUB," as consumers cannot see a stylized logo or "instantly recall a stylized logo that consists entirely of words." (ECF No. 28 at 13.)

The third and fourth factors also support dismissal, as BCC and OMH Brooklyn operate in the same market: they are both comedy venues, in the same neighborhood, that produce comedy shows for the public. Though BCC offers additional services, like comedy classes and industry showcases, the plaintiff alleges that they are known in Brooklyn and the wider New York metropolitan area for their comedy shows. (ECF No. 1 ¶ 1.) The plaintiff has also adequately alleged the fifth factor, actual consumer confusion. (*Id.* ¶ 46.)

The complaint includes only a few speculative allegations about the defendants' bad faith, and does not address the respective quality of the products or the sophistication of the consumers in the relevant market. However, because the plaintiff sufficiently pleads the other factors, it has established consumer confusion, and has stated a claim upon which relief may be granted.[11]

---

[11] The plaintiff points out that the TTAB previously "adjudicated a trademark opposition proceeding between [the p]laintiff and OMH where [the p]laintiff opposed OMH's application to register the [March 2021] mark . . . on the basis of a likelihood of confusion with [the plaintiff's] BCC Mark." (ECF No. 28 at 16; *see* ECF No. 28-7). TTAB "rendered judgment in favor of [the p]laintiff by default," therefore "[finding] OMH's applied-for mark to be confusingly similar to [the BCC Mark]." (ECF No. 28 at 16; *see* ECF Nos. 28-8 and 28-9.) Accordingly, the plaintiff argues, the defendants are precluded from litigating that issue. (ECF No. 28 at 17 (citing *Diesel S.p.A. v. Diesel Power Gear, LLC*, No. 19-CV-9308, 2022 U.S. Dist. LEXIS 59035, at *12 (S.D.N.Y. Mar. 30, 2022) (precluding the defendant from relitigating likelihood of confusion because the "default judgment entered by the TTAB against Defendant in the initial opposition proceeding acts as a final judgment on the merits"). The plaintiff "seeks leave to file a summary judgment motion" on this issue. (*Id.*) Once the defendants file their answer, the plaintiff may request a pre-motion conference to discuss the anticipated motion, as provided in Individual Rule 4(A).

## CONCLUSION

For these reasons, the defendants' motion to dismiss the complaint is denied.

**SO ORDERED.**

   s/Ann M. Donnelly
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       February 7, 2024